PS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ERNEST HUGHEY,

                    Plaintiff,

          v.                                                    23-CV-6270-DGL
                                                               ORDER
WILLIAM J WAGNER,
NICHOLAS M. ADAMS,
CONNOR BROCK,
JOSHUA WOODWARD,
COLLIN RYNDERS,
TROY SHELNUT,
LOMBARD (JOHN DOE),
MONROE COUNTY,
CITY OF ROCHESTER,[1]

                    Defendants.

_____

## INTRODUCTION

*Pro se* Plaintiff Ernest Hughey, currently confined at Livingston County Jail, filed a

Complaint asserting claims under 42 U.S.C. § 1983.  Docket Item 1.  Plaintiff also filed an

application to proceed *in forma pauperis*, Docket Item 2, and submitted a signed

authorization, Docket Item 5.  The Court granted Plaintiff's application to proceed *in forma*

*pauperis* and screened Plaintiff's Complaint, permitting Plaintiff's excessive force claim to

proceed and dismissing all other claims with leave to amend.  Docket Item 7 (the initial

screening order).

---

[1] The Clerk of Court is directed to amend the caption as set forth herein.  *See* Docket Item 8 at 2, ¶ 6
(Connor Brock); ¶ 7 (Joshua Woodward).

Plaintiff timely filed an amended complaint, Docket Item 8, which the Court now screens under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a).  As set forth below, Plaintiff's excessive force claim against Rochester Police Department ("RPD") officers William J. Wagner ("Wagner"), Connor Brock ("Brock"), Joshua Woodward ("Woodward"), Collin Rynders ("Rynders"), and Troy Shelnut ("Shelnut") will proceed to service; his failure to intervene claim will proceed to service upon RPD officer Lombard (John Doe) ("Lombard"); his claim against Monroe County is dismissed without leave to amend; and his false arrest, malicious prosecution, and municipal liability claims are dismissed with leave to amend.

## DISCUSSION

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims."  *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).  The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b)(1)-(2).

## I.    THE AMENDED COMPLAINT

The Amended Complaint sticks closely to the facts alleged in the original Complaint, provides some additional detail, adds Defendants Rynders, Shelnut, and the City of Rochester, and modifies the John Doe Defendant to "Lombard (John Doe)." Because the facts in the Amended Complaint are substantially similar to the original

Complaint, the Court recites facts alleged in the Amended Complaint only to the extent necessary to the analysis of the amended claims.

## II.    LEGAL STANDARD

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).   "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command.  *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004).  Moreover, the theory of *respondeat superior* is not available in a § 1983 action.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).  "[T]here is no special rule for supervisory liability.  Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks omitted).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The principal purpose of the Rule is to "give the adverse party fair

notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

## III.    CLAIMS PROCEEDING TO SERVICE

### A.    Excessive Force

In its initial screening order, the Court found Plaintiff's excessive force claim sufficient to proceed to service upon Defendants Brock, Woodward, Wagner, and Doe. Docket Item 7 at 5-6.   Plaintiff's Amended Complaint adds Defendants Shelnut and Rynders to this claim, alleging that "Defendant officers approached and tackled Plaintiff as he stood with both hands in the air."  Docket Item 8 at 9, ¶ 15.[2]  "Shelnut grabbed Plaintiff['s] left arm in a wrist/locking motion and punched Plaintiff in the back of his head, while falling to the ground . . . . While Plaintiff was on the ground[,] Shelnut continued to 'knee strike' [b]lows to Plaintiff['s] lower back."  *Id.* at 9, ¶ 17.   While Plaintiff was handcuffed on the ground, Rynders delivered "'knee strike' blows to Plaintiff['s] lower back and thighs," and Wagner, Woodward, and Brock "stomped on Plaintiff's head causing Plaintiff['s] head to forcefully hit the pavement."  *Id.* at 9-10, ¶¶ 18-19.  Defendant Lombard did not "intervene," but "instead decided to search [Plaintiff's] vehicle with Joshua Woodward."  *Id.* at 10, ¶ 20.

As currently pled, Plaintiff's excessive force claim meets the threshold requirements to proceed to service upon Defendants Brock, Woodward, Wagner, Shelnut, and Rynders.

---

[2] Plaintiff's Amended Complaint repeats paragraph numbers.  *See* Docket Item 8 at 4-7 and 8-10. Therefore, to avoid confusion, when citing to the Amended Complaint the Court includes both the page number and the paragraph number.

### B.    Failure to Intervene

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Flannery v. City of Rochester*, ___ F. Supp.3d ___, 2022 WL 16856660, at *8 (W.D.N.Y. Nov. 10, 2022) (quoting *Allen v. City of New York*, 480 F. Supp. 2d 689, 694 (S.D.N.Y. 2007)).   A claim for an officer's failure to intervene is alleged by "demonstrating that '(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) the officer knew that the victim's constitutional rights were being violated; and (3) the officer did not take reasonable steps to intervene.'" *Id.* (brackets omitted) (quoting *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008)).

Though sparse, Plaintiff's allegation that "Defendant Lombard[] failed to intervene with the [assault and] instead decided to search [Plaintiff's] vehicle with Joshua Woodward," Docket Item 8 at 10, ¶ 20, is sufficient at this early stage to proceed to service.   The Complaint permits inferences that: Lombard was a member of the unit that surveilled, followed, stopped, and arrested Plaintiff; Lombard was present during the entirety of the alleged use of excessive force; this constitutional violation was obvious; and he was in a position to intervene and prevent his fellow officers from harming Plaintiff. Accordingly, this claim will proceed to service upon Lombard.

## IV.   CLAIMS DISMISSED WITH LEAVE TO AMEND

In *Heck v. Humphrey*, ("*Heck*"), the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged

by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus," 512 U.S. at 486-87 (footnote omitted); *see also Wilkinson v. Dotson,* 544 U.S. 74, 81 (2005) ("*Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success *would* necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence." (emphasis in original)).

Plaintiff states in his Amended Complaint that all charges "derived from" the subject arrest have been dismissed.  Docket Item 8 at 10, ¶ 23.  However, federal charges deriving from that arrest are currently pending before this Court.  *See* 6:22-cr-06191-DGL-MWP.[3]  Consequently, even if plausibly alleged, *Heck* may bar Plaintiff's false arrest, malicious prosecution, and municipal liability claims.  If such claims are *Heck*-barred, the Court will, as appropriate, stay or dismiss the claims without prejudice to refiling pending the conclusion of the criminal case.  *See, e.g., Wallace v. Kato*, 549 U.S. 384, 393–94 (2007) ("If a plaintiff files a false-arrest claim before he has been convicted . . . it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case . . . is ended."); *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022) ("To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only

---

[3] The Court is permitted to take judicial notice of the criminal case and the complaint filed therein "to establish the fact of such litigation and related filings."  *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (quotation omitted); *see also Garnett v. City of New York*, No. 13-CV-7083 (JSR), 2014 WL 1383255, at *2 (S.D.N.Y. Apr. 4, 2014) (taking judicial notice of criminal complaint and trial transcript from plaintiff's associated criminal case); *Vasquez v. City of New York*, No. 99-CV-4606 (DC), 2000 WL 869492, at *1 n.1 (S.D.N.Y. 2000) (taking judicial notice of documents in plaintiff's criminal file—including arrest report, criminal felony complaint, indictment, and acquittal—as public records).

show that his prosecution ended without a conviction."); *Kalican v. Miller*, No. 3:09-CV-1153 (RNC), 2009 WL 2600073, at *1 (D. Conn. Aug. 20, 2009) (finding that any claim that the plaintiff was "wrongly convicted due to misconduct on the part of the defendants . . . must be dismissed for failure to state a claim on which relief may be granted . . . until the conviction has been overturned" (citing *Heck*, 512 U.S. at 486–87) (collecting cases)).

If Plaintiff intended to assert claims exclusively upon dismissed state charges, to avoid the *Heck*-bar, he must demonstrate that the dismissed state charges are unrelated to the pending federal charges. *See, e.g., Thompson v. Delvalle*, 2010 WL 2505638, *3 (S.D.N.Y. 2010) (concluding that *Heck* barred a § 1983 false arrest claim where plaintiff was convicted federally on charges stemming from the same set of events underlying the state charges that were dismissed); *Faison v. Maccarone*, No. 11-CV-0137 JFB ETB, 2012 WL 681812, at *8 (E.D.N.Y. Mar. 1, 2012) (concluding that the plaintiff could not assert a malicious prosecution claim based on the state prosecution, where the "state charges were dismissed due to the federal prosecution"); *Corley v. Vance*, 365 F. Supp. 3d 407, 439 (S.D.N.Y. 2019) (concluding that because the plaintiff "was convicted on federal charges stemming from the precise conduct underlying his dismissed state charges, the dismissal of the state charges was not a favorable termination"), *aff'd sub nom. Corley v. Wittner*, 811 F. App'x 62 (2d Cir. 2020).

### A.    False Arrest

The elements of a false arrest claim are: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).  In determining whether an arrest

was otherwise privileged, courts typically consider whether there was legal justification for the challenged arrest or, "in most cases, whether there was probable cause." *Marom v. City of N.Y.*, No. 15-cv-2017 (PKC), 2016 WL 916424, at *5 (S.D.N.Y. Mar. 7, 2016). Probable cause to arrest constitutes a "complete defense to an action for false arrest," even where a person is ultimately acquitted. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)).

Regarding his arrest by RPD officers, Plaintiff alleges that he was arrested for outstanding warrants, but that the warrants used to justify his arrest were associated with a prior case that had been dismissed "on or around" March 9, 2021, more than a year before the arrest that formed the basis of this lawsuit. Docket Item 8 at 4, ¶ 4; 8, ¶ 1. He further alleges that at the time of his arrest he had no active warrants, that Defendants Woodward, Brock, Wagner, and Lombard knew he did not have active warrants, that the officers did not have reasonable suspicion to initiate the traffic stop, and that nothing occurred during the stop that blossomed into probable cause to arrest him. *Id.* at 4, ¶ 4; 8, ¶¶ 5-9. *See Hernandez v. City of Rochester*, 260 F. Supp. 2d 599, 610-11 (W.D.N.Y. 2003) (observing that reasonable suspicion may blossom into probable cause when, for example, additional facts come to the attention of the detaining officer).

Because the Court must at this stage of this proceeding accept the facts pled as true, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the Court finds that Plaintiff has plausibly alleged a false arrest claim as to Woodward, Brock, Wagner, and Lombard. *See* Docket Item 8 at 8, ¶¶ 7-9; 9-10, ¶¶ 17-18, 20 (Plaintiff's allegations against Shelnut and Rynders are limited to their use of excessive force).

8

However, the Court finds that Plaintiff's Amended Complaint does not sufficiently allege that he is challenging (1) only dismissed state charges (2) that are so removed from the pending federal charges that this claim is not *Heck*-barred.  Notably, Plaintiff's allegations regarding Adams initiating an investigation into a "shots fired" report on July 17, 2022, Docket Item 8 at 4, ¶¶ 5-6, are echoed in the federal criminal complaint. Accordingly, Plaintiff may replead this claim in a second amended complaint to demonstrate why the claim is not *Heck*-barred.

### B.   Malicious Prosecution

The elements of a malicious prosecution claim are: (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice.  *See Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983).  "A showing of malice requires sufficient allegations 'that the defendant . . . commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'"  *Laboy v. County of Ontario*, 668 F. App'x 391, 394 (2d Cir. 2016) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996)).

Plaintiff alleges the Defendant RPD officers filed fabricated investigative reports "under the pretense" of an "open case" which the officers knew had "been dismissed and warrants quashed."  Docket Item 8 at 10, ¶ 23.  In other words, Plaintiff alleges the RPD officers lied in their reports, stating that Plaintiff had outstanding warrants in an open case when they knew he did not, to justify arresting him on that basis.  Plaintiff also alleges that the filing of false or fabricated investigative reports is a common practice among RPD

9

officers, who do so to justify or cover-up unconstitutional conduct, and the Defendant-officers in this case conducted themselves no differently. *Id.* at 5, ¶¶ 10-14; 6, ¶¶ 17-22.

Commencing a criminal proceeding against Plaintiff with fabricated investigative reports evinces an improper motive. *Id.* at 6, ¶ 16; 10, ¶ 23. This Court therefore finds that this claim warrants further factual development as to Woodward, Brock, Wagner, and Lombard. Again, however, Plaintiff's Amended Complaint lacks sufficient clarity for the Court to determine whether the claim is *Heck*-barred or may proceed to service. Plaintiff may replead this claim in a second amended complaint to demonstrate why the claim is not *Heck*-barred.

### C.    Municipal Liability

Plaintiff names Monroe County and the City of Rochester as Defendants in this action, but Plaintiff conflates Monroe County with the City of Rochester. Plaintiff sues police officers employed by RPD. *See* Docket Item 8; Docket Item 9 (*Valentin* response). Monroe County, who did not employ the police officer Defendants, therefore could have had no meaningful role in any alleged wrongs. Better pleading will not cure deficiencies in Plaintiff's claims against Monroe County and such claims are therefore dismissed without leave to amend. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (leave to amend pleadings may be denied when any amendment would be futile).

Regarding the City of Rochester (the "City"), as the Court stated in its initial screening order, Docket Item 7 at 8, to hold a municipality liable in a § 1983 action, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995). One way a plaintiff can establish an

official policy or custom is by showing a persistent and widespread unconstitutional practice within the municipality.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("Official municipal policy includes . . . practices so persistent and widespread as to practically have the force of law.").

Plaintiff has identified six cases filed between 2018 and 2022 alleging that RPD officers used excessive force in detaining arrestees and then fabricated charges to justify or cover up their unconstitutional conduct.  *See* Docket Item 8 at 6-7, ¶¶ 18-23.[4]  Plaintiff alleges that the City was aware of each of these incidents, by use of "an internal computer tracking system known as IA Pro," and despite having "prior notice of claims against RPD officers" for the type of conduct alleged, did not correct the "abuse of authority" that caused Plaintiff's injuries.  *Id.* at 7, ¶¶ 25-26.

The allegations made in the cases cited by Plaintiff show a pattern of RPD officers falsifying documents and fabricating charges to cover up or justify their use of excessive

---

[4] Plaintiff cites *Lawhorn v. Algarin*, No. 16-CV-6226-FPG, 2018 WL 1046794, at *6 (W.D.N.Y. Feb. 26, 2018) (alleging excessive force and that defendant "'baselessly charged the Plaintiff with a felony' and 'knowingly and intentionally provided false information to the Court' that resulted in Plaintiff's incarceration"); *Scott v. City of Rochester*, No. 17-CV-6359-FPG, 2018 WL 4681626, at *2 (W.D.N.Y. Sept. 28, 2018) (alleging excessive force and that RPD officers "falsified their reports of the incident to justify their use of force and the charges against Scott"); *Simmons v. Ferrigno*, No. 6:17-CV-06176 MAT, 2019 WL 12361880, at *5-7 (W.D.N.Y. Aug. 5, 2019) (alleging excessive force and that "defendants issued criminal process against [plaintiff] by fabricating and falsifying evidence in order to create a justification and cover up for their own actions"); *Colon v. City of Rochester*, 419 F. Supp. 3d 586, 594 (W.D.N.Y. 2019) (alleging excessive force and that "RPD officers routinely draft depositions and similar papers, often containing false statements, to provide 'cover' for their unlawful arrests"); *Bryant v. Monroe Cnty.,* No. 19-CV-6474 CJS, 2022 WL 119184, at *4 (W.D.N.Y. Jan. 12, 2022) ("The Complaint alleges that Defendants [including two RPD officers] used excessive force while arresting Plaintiff without probable cause, and then filed false criminal charges against him to cover up their wrongdoing."); *Andrews v. City of Rochester*, No. 21-CV-6764-FPG, 2022 WL 2356630, at *1 (W.D.N.Y. June 30, 2022) (alleging defendant "fabricated official RPD paperwork and falsely accused Plaintiff of inciting a riot in the second degree").  *See also McKnight v. Vasile*, No. 11-CV-6328P, 2018 WL 4625549, at *1, *8 (W.D.N.Y. Sept. 27, 2018) (awarding compensatory damages of $191,000 to plaintiff who prevailed on her state law claims for false arrest, false imprisonment, and battery against Rochester police officer); *Cabisca v. City of Rochester*, No. 14-CV-6485-JWF, 2019 WL 5691897, at *20 (W.D.N.Y. Nov. 4, 2019) (awarding plaintiff $50,000 in compensatory damages on plaintiff's state law claim for battery and claim for excessive force under 42 U.S.C. § 1983 against Rochester police officers).

force.  Plaintiff's assertion that despite the City's awareness of the misconduct, it did not correct or discourage it sufficiently alleges the City's tacit endorsement of the practice. Together, these allegations are sufficient to support the "official policy or custom" element of a municipal liability claim.   *See Keene v. City of Rochester*, No. 6:17-CV-06708-MAT, 2018 WL 1697486, at *4 (W.D.N.Y. Apr. 7, 2018) (finding that identification of "at least eight instances between 2002 and 2014 wherein RPD officers allegedly used excessive force in detaining arrestees" paired with allegations that "the City's sole focus is in justifying the unlawful use of force by RPD officers, and that its investigatory procedures are shams intended to provide cover for the City's failure to discipline RPD officers who engage in constitutional violations" was sufficient to state a claim under *Monell*).

Although Plaintiff plausibly alleges a widespread pattern or practice (the first element of a municipal liability claim), he does not allege that the practice caused him to be subjected to a denial of his constitutionally protected rights (the second and third elements of a municipal liability claim).  Plaintiff does not allege that the RPD officers fabricated charges against him to cover-up or justify their use of excessive force against him.  Instead, Plaintiff alleges the officers falsely reported that he had outstanding warrants in order to arrest him for outstanding warrants.  Consequently, Plaintiff has not plausibly alleged that the widespread practice he identified—filing false reports to cover up or justify the use of excessive force—caused him to be subjected to a denial of his constitutional rights.  However, the Court grants Plaintiff one final opportunity to replead this claim in a second amended complaint. Plaintiff should be mindful of the *Heck* principles explained above when repleading this claim.  *See Lynch v. Suffolk Cty. Police Dep't*, 348 F. App'x. 672, 675 (2d Cir. 2009) (summary order) (where *Monell* claim was

"derivative" of claims against individuals, and those claims were barred under *Heck*, *Monell* claim was also barred); *Drew v. City of New York*, No. 18-CV-10557 (JMF), 2020 WL 3869732, at \*4 (S.D.N.Y. July 9, 2020) (where *Heck* prevents a plaintiff from pleading that a constitutional violation was committed, a *Monell* claim cannot be established).

## CONCLUSION

For the reasons set forth above, Plaintiff's claims against Monroe County are dismissed without leave to amend; his excessive force claim will proceed to service upon Brock, Woodward, Wagner, Shelnut, and Rynders and his failure to intervene claim will proceed to service upon Lombard.  Service will be deferred until either Plaintiff files a second amended complaint and the Court has screened it or the time to file a second amended complaint has expired.

Pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (per curiam), the City of Rochester Corporation Counsel's office shall provide the Court with the full name of Defendant "Lombard (John Doe)" and shall apprise the Court where each Defendant can currently be served no later than **30 days from the date of this order**.  This information may be mailed to the Pro Se Litigation Unit, United States District Court, 2120 Kenneth B. Keating Federal Building, 100 State Street, Rochester, New York 14614.

Plaintiff's false arrest, malicious prosecution, and municipal liability claims are dismissed with leave to amend.  Plaintiff's second amended complaint is due no later than **45 days from the date this order is entered**.  Plaintiff is advised that an amended complaint ***completely replaces*** the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect."  *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

Therefore, the second amended complaint must include all of the allegations against Defendants so that it may stand alone as the sole complaint in this action which Defendants must answer.

**ORDER**

IT HEREBY IS ORDERED that all claims against Monroe County are dismissed, and the Clerk of Court shall terminate Monroe County from this action; and it is further

ORDERED that Plaintiff's excessive force claim will proceed to service upon Brock, Woodward, Wagner, Shelnut, and Rynders; his failure to intervene claim will proceed to service upon Lombard; and it is further

ORDERED that all other claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); and it is further

ORDERED that Plaintiff is granted leave to file a second amended complaint as directed above by no later than **45 days from the date this order is entered**; and it is further

ORDERED that the Clerk of Court is directed to send to Plaintiff with this Order a copy of the Amended Complaint, a blank § 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that if Plaintiff does not file a second amended complaint, the Clerk of Court is directed to cause the United States Marshals Service to serve copies of the Summons, Amended Complaint, and this Order upon William J. Wagner, Connor Brock, Joshua Woodward, Collin Rynders, Troy Shelnut, and Lombard (John Doe) (once identified) without Plaintiff's payment therefore, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor; and it is further

ORDERED that once served, Wagner, Brock, Woodward, Rynders, Shelnut, and Lombard shall answer the operative complaint or respond under 42 U.S.C. § 1997e(g); and it is further

ORDERED that the Clerk of Court is directed to forward a copy of the Amended Complaint and this Order to City of Rochester Corporation Counsel, Room 400A, City Hall, 30 Church Street, Rochester, New York 14614; and it is further

ORDERED that pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (per curiam), the City of Rochester Corporation Counsel's office shall provide the Court with the full name of Defendant "Lombard (John Doe)" and shall apprise the Court where each Defendant can currently be served no later than **30 days from the date of this order**; and it is further

ORDERED that Plaintiff shall notify the Court in writing if his address changes. The Court may dismiss the action if Plaintiff fails to do so.

SO ORDERED.

David G. Larimer
United States District Judge

DATED:      October 2, 2023
            Rochester, NY